## HOGG v. CAMPBELL et al.
### No. 2707.

Court of Civil Appeals of Texas. El Paso.
March 17, 1932.

Jones & Jones and Percy Woodard, all of Marshall, for appellant.

Russell & Starley and Russell, Hubbard & Kerr, all of Pecos, for appellees.

PELPHREY, C. J.

On August 24, 1931, appellees filed this suit in the district court of Winkler county against the commissioners' court of Winkler county, G. C. Olsen, county judge, J. B. Walton, commissioner of precinct No. 1, W. K. Wilson, commissioner of precinct No. 2, Gilbert Hogg, who it is alleged was undertaking to act as commissioner of precinct No. 3, and Oscar Moffett, who it is alleged was undertaking to act as commissioner of precinct No. 4.

They, in substance, alleged that the four above named, together with the County Judge Olsen, constituted, on that date, the acting commissioners' court of Winkler county; that appellees were residents, citizens, taxpayers, and qualified voters of precinct No. 3 in said Winkler county; that prior to August 10, 1931, Winkler county was divided into four election precincts, numbered 1, 2, 3, and 4, which precincts were so laid out, and voting places therein established, so as to place the voting places as convenient to the voters living in each of the precincts as possible; that said election precincts were identical, as to boundary and territory, with each of the justices and commissioners' precincts of the county; that, prior to the August term of said commissioners' court, Commissioner Wilson was a resident of election, justice, and commissioner's precinct No. 2; that Commissioner Walton was a resident of election, justice, and commissioner's precinct No. 1; that Commissioner Moffett was a resident of the town of Kilgore in the eastern part of the state of Texas, but at the regular election preceding had been a resident of election, justice, and commissioner's precinct No. 4, but had thereafter permanently removed from Winkler county; that Gilbert Hogg is exercising the function of commissioner of commissioner's precinct No. 3, and claims to be a resident thereof; that at a regular session of the commissioners' court, on the 10th day of August, 1931, the defendants, acting as a commissioners' court, undertook to redivide said county into election precincts, a correct copy of the order so made attached to petition and make a part thereof; that the commissioners' and justices' precincts have not been changed, and remain as theretofore established; that under the order of August 10, 1931, election precincts 1, 3, and 4 each contain parts of two justice precincts; that by reason thereof said order is void by virtue of the provisions of article 2933, Revised Statutes; that the order was arbitrary and void because the commissioners' court was not thereby seeking to and did not divide the county into convenient election precincts for the convenience of the voters; that the order was so made for the sole purpose of so dividing the county as to make it inconvenient for the voters to reach the polls, hoping to be able to dominate the politics of the county, prevent the election of honest officials for the sole purpose of continuing the squandering of public funds by the said court, and the payment of high and unjust salaries to the county officers of said county; that, by virtue of said order, the voters in the election precincts, except No. 2, would cast their ballots for two justices and two commissioners, according to which justice or commissioners' precinct includes the residence of the voter, which would lead to interminable confusion, making it necessary for the judges of election to acquaint themselves with the location of the residence of the voter in order to pass upon the validity of the votes; that most of the voting strength of the county is located in the town of Wink and a strip of territory north thereof about 1 mile wide and 6 miles long, north and south; that prior to said or-

der the voters in and near the town of Wink were in precinct No. 2, and voted at Wink or in precinct No. 4, and voted at Kermit; that they were within 7 miles of their voting places; that, under the order aforesaid, a large part of said voters will be forced to travel more than 25 miles to their voting place, thereby making it so inconvenient that a great number will be unable to cast their ballots; that, prior to the passage of said order, J. M. Waddell had been elected commissioner from precinct No. 3; that said Gilbert Hogg was declared elected, however, and, upon said election being contested, said Gilbert Hogg, by giving the bonds provided by statute, retained said office; that the purpose of the commissioners' court in passing the order aforesaid was to prevent said Waddell from qualifying as commissioner of precinct No. 3, thinking said order would have the effect of putting his residence in precinct No. 4; that the fixing of the voting place, precinct No. 3, as provided in said order, makes same inaccessible to Seth Campbell and his family; that the order was also void because the boundaries set out therein do not meet, and do not describe the territory. The petition closed with a prayer that the commissioners' court be temporarily restrained from putting the order into effect; that, upon hearing, the injunction be made permanent and the order canceled and held for naught.

On October 29, 1931, Olsen, Walton, Moffett, Wilson, and Hogg filed their amended answer, in which they demurred to plaintiff's petition on the ground that plaintiffs had an adequate legal remedy, and therefore no equitable jurisdiction was shown by the facts alleged. The answer contained also a general demurrer and certain special exceptions, a general denial and certain special allegations and denials.

Those allegations are: That prior to the action of the commissioners' court the county was divided into four election precincts, No. 1 having a voting population of about 16 votes, No. 2, about 500 votes, No. 3, about 7 votes, and No. 4, about 234 votes; that this grossly unequal distribution of the voting population, where 734 votes elected two commissioners and approximately only 23 voters elected the other two, required correction, as did the unequal distribution of property valuations in precincts 2 and 4; that, in response to many complaints from the citizenship and a majority of the electorate, the court changed the election precincts so that precincts 1 and 3 would have about 50 votes each as well as a greater amount of the property valuation of the county; that the change made was the only practical and feasible change which could be made to accomplish the object for which it was made; that thereafter, on September 1, 1931, said court, before any election was held and before any action was taken under the order of August

10th, changed the justices' and commissioners' precincts, making them conform to the election precincts created on August 10th, thereby conforming to all requirements of the statute. Defendants further specially denied that the order was arbitrarily made for the purpose of dominating the politics of the county, for the purpose of preventing the election of honest officials, for the purpose of squandering the public funds or paying unjust salaries to officials, that the voting place fixed by said order was inconvenient to Seth Campbell, and alleged that the voting place fixed therein was more convenient than the one existing before the change, and denied that the order failed to sufficiently describe the territory embraced in the several precincts.

On October 1, 1931, this court affirmed a judgment declaring Waddell the duly elected commissioner from precinct No. 3, and the record reveals that he thereafter assumed the duties of said office.

On October 31st Gilbert Hogg filed a plea of intervention in the suit and alleged himself to be a resident, citizen, taxpayer, and voter of Winkler county, praying that he be permitted to intervene, and that a writ of certiorari be granted to the commissioners' court, and that the clerk thereof be commanded to transfer to the district court all proceedings surrounding the execution of an order of said court of October 28, 1931.

Hogg alleged that he was a resident of precinct 3, and had a special interest in the existing cause, in that it was to his advantage to have a greater number of voters in his precinct than existed therein prior to August 10, 1931; that the change made in the voting strength of precinct 3 was greatly needed as a matter of public convenience, and that he would suffer great injury as a voter and possible officeholder in said precinct in case plaintiffs should prevail in the suit. He then adopted the pleadings theretofore filed by the defendants. He further alleged that, since the issue had been joined in the suit, Waddell had wrongfully qualified as a member of the commissisoners' court, and that the court had acted only by virtue of the qualification of Waddell in an effort to hold for naught the salutory change made in the election precincts by the order of August 10th; that he had been informed and believed that defendants were attempting to confess judgment in the cause, greatly to the detriment and welfare of Winkler county; that such action would work an irreparable injury on intervener as a citizen and voter as well as a prospective candidate for office in said precinct; and that, by virtue of the wrongful attempt of Waddell to act both as plaintiff and defendant, and to confess judgment for defendants, it was necessary for intervener to become a party for the best interests of Winkler county and the citizenship thereof.

He further alleged that he was informed and believed that Olsen, county judge, Walton, commissioner, and plaintiff Waddell, attempting to act as a member of the commissioners' court, did attempt to pass on October 28, 1931, an order wherein an effort was made to change the commissioners' and justices' precincts in such manner as to make them conflict with the election precincts as established August 10, 1931; that said order was of vital importance to the pending suit, was entered by virtue of the action of one of the plaintiffs in the suit whose interest as plaintiff materially conflicted with his public duty as county commissioner; that Waddell was disqualified by law to act both as plaintiff and defendant in passing said order, therefore, said order was not passed by a legal majority of the commissioners' court; that Waddell, though having been adjudged entitled to said office of commissioner by this court, attempted to qualify and took the oath of said office before such judgment became final and before the mandate of this court had been returned to the district court; that Waddell at the time of his attempted qualification was not, and is not now, a resident of precinct 3; that the passage of said order constituted an effort on the part of the court to pass a legislative or judicial order for the sole purpose of affecting then existing legal rights in the process of litigation, and to aid the cause of action of plaintiffs; that the only purpose and effect of said order was to cause a conflict between the commissioners' and justices' precincts and the election precincts established August 10, 1931, contrary to the provisions of article 2933, Revised Statutes; that said order was a gross abuse of the discretion of the commissioners' court, in that it brought about a conflict prohibited by law where none theretofore existed. By way of cross-action, intervener prayed for a writ of certiorari, and, in the alternative, that the execution of the order be restrained.

The plaintiffs on November 2, 1931, contested the motion of intervention and the plea for writ of certiorari, demurring generally and specially to appellant's motion and plea, also by general denial and special answer.

The trial court struck the intervener's plea of intervention and petition for intervention from the record, but granted him permission to replead so as to follow the pleadings of defendant filed prior to October 31, 1931.

Intervener then filed his answer containing the same allegations as the answer theretofore filed by defendants, and the court overruled the general and special exceptions therein to plaintiff's trial petition.

The commissioners' court, C. J. Olsen, county judge, J. B. Walton, commissioner precinct 1, and J. M. Waddell, commissioner precinct 3, filed an answer to the trial petition of appellees, admitting that the order passed by the court on August 10, 1931, was not passed for the purpose of dividing the county into convenient election precincts; that it was in violation of article 2933; that it was passed for the purpose of undertaking to continue in office the commissioners voting for the same and passed for political reasons; and that the commissioners' court, on November 2, 1931, had passed and entered an order instructing G. C. Olsen, county judge, and the commissioners to make and file the above answer as the answer of the commissioners' court.

On November 3, 1931, appellees filed a supplemental petition in which they excepted specially to certain paragraphs of intervener's plea of intervention, and answered specially certain of its allegations. The court refused to sustain such exceptions.

Intervener, by supplemental answer, leveled special exceptions at paragraph 5 of the supplemental petition, but it does not appear that any action was taken thereon by the court.

The case was tried to a jury, and the jury was instructed to return a verdict for plaintiffs, and judgment was thereon rendered declaring the order of August 10, 1931, null and void, and permanently enjoining the commissioners' court from putting same into effect.

Intervener has perfected this appeal therefrom to this court.

### Opinion.

Article 2933, Revised Statutes, reads: "Each commissioners court may, if they deem it proper, at each August term of the court, divide their respective counties, and counties attached thereto for judicial purposes, into convenient election precincts, each of which shall be differently numbered and described by natural or artificial boundaries or survey lines by an order to be entered upon the minutes of the court. They shall immediately thereafter publish such order in some newspaper in the county for three consecutive weeks. If there be no newspaper in the county, then such copy of such order shall be posted in some public place in each precinct in the county. No election precinct shall be formed out of two or more justice precincts, nor out of the parts of two or more justice precincts. The commissioners court shall cause to be made out and delivered to the county tax collector, before the first day of each September a certified copy of such last order for the year following."

This was the authority under which the court purported to act in passing the order of August 10, 1931.

Appellant here insists that the commissioners' court, having constitutional and statutory power to change election precincts at the August term of the court, and having additional power to change the commissioners'

and justices' precincts at the September term, could rectify the omission to conform the commissioners' and justices' precincts to the election precincts at such September term, no election having been held in the interim; and that the order of August 10th was not void, but, at most, avoidable, and susceptible of being corrected at the September term, and that such order was admissible to show such correction.

Appellees, on the other hand, insist that an order of the commissioners' court which violates a positive mandatory limitation upon its power is void; that, where such order is made the subject of a suit in the district court, the commissioners' court cannot, by any subsequent order, change the status of the litigation; that the district court, having power to supervise the acts of a commissioners' court, should, where an order of the commissioners' court deliberately violates the statutory purpose, and the commissioners' court confesses such illegal purpose and result, annul and cancel said order; and that a citizen cannot, as an intervener, usurp the powers of the commissioners' court, and prevent the annulment of such an order, where plaintiff claimed, and defendants admitted, the illegality of the order.

Appellant argues that article 5, § 18, gives to the commissioners' court the inherent power of dividing the county into convenient precincts with a numerical limitation, and that this power includes election precincts. We cannot agree with such contention. A casual reading of the section will reveal that it refers only to justices' and commissioners' precincts, and does not have any reference to election precincts.

It would be needless to say that a division of some of our populous counties into only eight election precincts would result in a great number of the voters thereof being unable to vote at all; it being a matter of common knowledge that only a certain number of voters would be able to deposit their votes in any given precinct within the hours which the law provides the polls shall remain open.

The Legislature evidently considered election precincts not included within such section when it provided that the commissioners' courts should, in establishing new election precincts, divide, with certain limitations, cities and towns into as many election precincts as it might see proper. Article 2934, R. S. We therefore find that the authority for dividing counties into election precincts is that conferred by articles 2933 and 2934.

Our Supreme Court, in Mills County v. Lampasas County, 90 Tex. 603, 40 S. W. 403, 404, specifically held that commissioners' courts could exercise only such powers as the Constitution itself or the Legislature had specifically conferred upon them. In the opinion they referred to their former holding to the same effect in Bland v. Orr, 90 Tex. 492, 39 S. W. 558. The court said: "In our opinion, it is not true, as counsel for the appellant county insists in his elaborate written argument, that the constitution confers upon the commissioners court any general authority over the county business, but merely gives them such special powers and jurisdiction over all county business as is conferred by the constitution itself and the laws of the state, or as might be thereafter prescribed."

While it is true that article 2933 confers on the commissioners' courts the power to divide their counties into convenient election precincts, it further prohibits the inclusion therein of two or more, or parts of two or more, justices' precincts.

In our opinion this is a limitation upon the power of the commissioners' courts, and any order creating an election precinct containing two or more justices' precincts or parts thereof would be beyond the power granted and void.

In Anderson v. Ashe, 99 Tex. 447, 90 S. W. 872, 874, the Supreme Court held that an order of the commissioners' court allowing a claim which was made after the rejection of the claim by the auditor, was void, and the doctrine there laid down, it appears to us, would apply with equal force to the case at bar. The court used this language: "The Legislature under article 5, § 18, of the Constitution, having the power to regulate the jurisdiction of the commissioners' court, had authority to make their jurisdiction depend upon the approval of the auditor, and, having done so, the courts are not authorized to construe the language so as to defeat the purpose of the Legislature."

The action of the commissioners' court being beyond the powers conferred upon it, injunction was a proper remedy to prevent it being put into effect. Robinson et al. v. Whaley Farm Corporation (Tex. Sup.) 37 S.W.(2d) 714; Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325; Haverbekken v. Hale, 109 Tex. 106, 204 S. W. 1162.

From what has been said, it follows that the judgment of the trial court should be affirmed, and it is so ordered.