**ROPER, County Judge, et al. v. HALL et al.
(No. 298.)**

(Court of Civil Appeals of Texas. Waco. Dec.
24, 1925. Rehearing Denied
Feb. 4, 1926.)

1. Counties ⚍113(1)—Authority of commissioners' court to make contracts in county's behalf limited to that conferred expressly or impliedly by Constitution and statutes.

Authority of commissioners' court to make contracts in county's behalf is strictly limited to that conferred, expressly or by fair or necessary implication, by Constitution and laws of state.

2. Counties ⚍113(1)—Commissioners' court held impliedly authorized to contract with individual for compilation of taxation data.

County commissioners' court, created by Const. art. 5, § 18, has implied power to contract with an individual for compilation of data for its use, while sitting as board of equalization, in determining taxable value of oil and gas properties in county, in view of Const. art. 8, §§ 1, 14, 18, and Rev. St. 1925, arts. 2351, 2352, 7152, 7189, 7191–7193, 7202, 7205, 7206, 7211, 7212; and such contract is not void as contemplating performance of duties imposed by law upon county assessor or commissioners' court.

3. Counties ⚍116—Contract of employment by county commissioners' court at compensation exceeding $2,000 held not void because not let to lowest bidder.

Contract of county commissioners' court, hiring an individual to compile data for its use in equalizing tax assessments at compensation exceeding $2,000, held not void because not let to lowest bidder, under Rev. St. 1925, art. 2368, where uncontradicted evidence supported recitals therein that scientific and technical knowledge and special and professional skill were required and furnished, and there was no showing of fraudulent purpose in incorporating such recitals.

4. Partnership ⚍64—Contract by individual in apparent firm name held not void, even if he filed no certificate of identity.

Individual's contract with county commissioners' court, signed in apparent firm name, held not void or unenforceable, even if Rev. St. 1925, art. 5924, requiring the filing of certificate of identity of persons doing business under an assumed name, was violated, especially where uncontradicted evidence showed that such individual was sole contracting party and only person doing business under such name, and that such facts were disclosed to commissioners before contract was made.

Appeal from District Court, Freestone County; J. R. Bell, Judge.

Suit by T. J. Hall and others against J. F. Roper, County Judge, and others. From an interlocutory order granting a temporary injunction, defendants appeal. Reversed, and temporary injunction refused.

Edwards & French, of Fairfield, Richard & A. P. Mays, of Corsicana, W. M. Harris, of Dallas, and Keys, Mason & Machen, of Mexia, for appellants.

Boyd & Smith, of Teague, and Williford & Geppert, of Fairfield, for appellees.

GALLAGHER, C. J. This is an appeal from an interlocutory order of the district court of Freestone county, granting a temporary injunction restraining the carrying out of a certain contract between the commissioners' court of said county and one Thos. Y. Pickett, doing business under the name of Thos. Y. Pickett & Co. The said commissioners' court, on December 22, 1924, entered into a written contract with the said Pickett, by the terms of which he was employed to perform and agreed to perform the following services:

(a) Compile a complete list of the record owners of all producing oil and gas properties located in Freestone county as of January 1, 1923, showing the particular interest or interests therein owned.

(b) Secure for the commissioners' court all information available for its use while sitting as a board of equalization in determining the proper valuations to be fixed upon such properties for taxation.

(c) Meet with the commissioners' court sitting as a board of equalization and furnish it all information secured by such investigation for the purpose of equalizing assessments on said properties.

(d) Make a valuation of all pipe lines, refineries, tank forms and tankage, and all other properties of value used in connection with said oil and gas development, including transportation facilities, etc.

According to the terms of said contract his compensation was to be an amount equal to 10 cents on each $100 increase in valuation covering oil properties only, over and above the valuation shown by the 1924 tax rolls of said county. Such compensation was to be paid in part by county warrants issued monthly during the progress of the work and by a final warrant for the remainder due under the contract when the work was completed and the correct amount ascertained. All said warrants were by express stipulation to be paid out of the general fund of said county and out of the anticipated receipts from taxes levied for general purposes for the year 1925 and receipts from other sources coming to said fund for said year. So much of said fund as was necessary to pay the warrants issued under said contract was by the terms of the contract set aside and appropriated to such purpose. On June 18, 1925, appellees, T. J. Hall and eight others, in the capacity of resident property taxpayers in said county, instituted this suit to enjoin the commissioners' court, the county clerk, and county auditor from is-

---

⚍For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
280 S.W.—19

suing any further county warrants under said contract, and to enjoin the county treasurer and county depository from paying any warrants already issued and from paying any warrants that might be thereafter issued under said contract. Thos. Y. Pickett was made a party to said suit. In addition to the prayer for a temporary injunction, appellees asked that on final hearing said contract be declared void and canceled. Appellees' petition was presented to the judge of the Eighty-Seventh district court, and he set the application for temporary injunction for hearing at the county seat on the 7th day of July, 1925, which was during a regular term of said court in said county. A hearing was had on said petition and on July 10, 1925, the court granted the temporary injunction in terms as prayed for by appellees. All the parties defendant in said suit except the county depository have joined in this appeal.

The question involved in this suit is the validity of said contract. Its validity was attacked by appellees in their said petition in the trial court on various grounds. The order of the court granting said temporary injunction was general. No conclusions of fact nor of law were filed. Appellees have filed no brief in this court.

The principal grounds on which the validity of said contract was attacked were that the commissioners' court was without lawful authority to make the same, and that said Pickett was engaged to perform duties imposed by law on the tax collector and on the commissioners' court, respectively. The statement of facts in this case discloses that there was at that time an extensive oil field in and around the town of Wortham in said county; that the owners of the surface of the land had rendered the same generally, as other farming lands and as other city lots were rendered; that the county tax assessor had no accurate information with reference to the leases and royalty interests held in said territory, nor with reference to the value of the same; that he had no accurate information with reference to the amount of oil produced from said field during the year, nor whether same was marketed or held in storage; and that he had no accurate information as to the amount of equipment used in producing and transporting said oil, nor of the value of the same; that he accepted renditions of property as tendered to him; and that the total amount of oil property voluntarily rendered for 1925 was about $2,000,-000. There was no contention that the members of the commissioners' court were acquainted with such properties in detail nor with the value of the same. The testimony showed that the work to be done by said Pickett under his contract was nearing completion; that he had prepared an accurate map of the entire oil field located in said county; that he had prepared accurate data showing the holders of all leases and royal-

ties and the value of the same; that he had prepared data showing the production of oil to that date from each lease, and all other data necessary to enable the assessor to correctly assess such leases and royalties, the oil produced therefrom and all equipment used in producing and transporting the same; that he had prepared all data necessary to enable the commissioners' court to value such properties, and all the same; and that he was ready to attend and would attend the sessions of the commissioners' court while sitting as a board of equalization, and would assist them in their efforts to correctly determine the taxable values of all of said properties. The evidence further showed that said data prepared by said Pickett disclosed that a large amount of such property was unrendered, and that the taxable value of such property voluntarily rendered was greatly in excess of the amount for which the same was rendered.

Commissioners' courts are created by the Constitution, and are given by its express terms such powers and jurisdiction over all county business as are conferred by the provisions thereof or by the laws of the state. Const. art. 5, § 18. The Constitution further provides that taxation shall be equal and uniform, that all property in this state shall be taxed according to its value, that an assessor of taxes shall be elected in each county; that the Legislature shall provide for equalizing, as near as may be, the valuation of all property subject to or rendered for taxation, and that the commissioners' court of each county shall constitute the board of equalization. Const. art. 8, §§ 1, 14, and 18. Said courts are authorized by statutory law to levy taxes; to sit as a board of equalization, and while sitting as such to inspect the assessment lists and books of the assessor and see that every person has rendered his property; to supervise assessments and correct errors therein; to hear evidence as to the value of property assessed for taxation, and, if satisfied that any such property is not properly valued, to increase or diminish the valuation of the same and to fix the proper valuation thereof; and finally, when their duties in the premises are performed, to approve the assessment lists and books and return them to the assessor for his use in making up the general tax roll. Rev. St. 1925, arts. 2352, 7206, 7211, and 7212. It is further provided that the commissioners' court or board of equalization shall employ some competent person to perform the duties imposed by law upon the assessor if he fails to perform the same. Rev. St. art. 7202.

The statutes contemplate a voluntary rendition of all taxable property by the owner thereof or by duly authorized representative. Rev. St. arts. 7152 and 7189. Failing to secure a rendition by the owner, it is the duty of the assessor to list and value such unrendered property as he may know about or discover.

Rev. St. arts. 7191 to 7193, inclusive, and 7205. No provision is made by the statute for aiding the assessor in discovering unrendered property, nor for securing a proper description thereof, nor for ascertaining its actual ownership. No standard of value for use in making assessments is prescribed except the assessor's own opinion. No special qualifications are prescribed to make a man eligible to hold such office. Evidently the law contemplates such discharge of the duties of that office as may be expected from a man of ordinary experience and capacity. It has made no express provision for extraordinary cases.

[1, 2] The authority of the commissioners' court of Freestone county as the governing body thereof to make contracts in its behalf is strictly limited to that conferred either expressly or by fair or necessary implication by the Constitution and laws of this state. 15 C. J. pp. 540, 541, § 233; Foster v. City of Waco, 113 Tex. 352, 355, 255 S. W. 1104; Von Rosenberg v. Lovett (Tex. Civ. App.) 173 S. W. 508, 511 (writ refused). Authority to make such a contract as the one under consideration is not conferred by the terms of Rev. St. art. 2351, which specified the general powers and duties of commissioners' courts, nor have we found any other statutory provision which can be said to expressly authorize such action. Express authority however, is given to the commissioners' court over the subject of the levying of taxes and requiring all property situated in the county to be properly assessed and to bear its proportion of the burden of taxation according to its value. See authorities above cited. The general powers so given to the commissioners' courts are of little practical value without the further authority to use adequate means to insure the proper, intelligent and effective exercise thereof. The Constitution requires and public policy demands that all taxable property shall contribute its just proportion to the expenses of government. The purpose of the contract under consideration was to aid in securing such result. The services contracted to be rendered called for information and experience not possessed by the ordinary person. So far as they affected the discovery, assessment, and valuation of unrendered oil properties, they could not have been performed by the county assessor unless he possessed extraordinary information and experience along the required lines. He testified in the case, and under oath disclaimed such qualification. Neither could the commissioners' court, sitting as an equalization board, perform its functions effectively without such expert aid. The court so declared, in effect, when it entered into the contract. It does not appear that it was the intent or effect of the contract that Pickett should perform the duties imposed by law on any of the officers concerned. On the contrary, it does appear that its purpose was merely to aid such officers in the effective performance of their respective duties. It has been expressly held by our Supreme Court that the commissioners' court has authority to employ additional counsel to *assist* the county attorney in filing and prosecuting actions against county officers intrusted with the collection or safe-keeping of public funds and charged with a breach of such trust, notwithstanding the duty to file and prosecute such actions is imposed by law on such county attorney. Rev. St. art. 339; Adams v. Seagler, 112 Tex. 583, 585, 250 S. W. 413.

The making of the contract under consideration was within the implied power possessed by the commissioners' court of Freestone county, and such contract did not contemplate the performance by said Pickett of duties imposed by law upon either the assessor or the commissioners' court. Our holding in this respect is supported in principle and effect by the following authorities: Von Rosenberg v. Lovett, supra; City of Richmond v. Dickinson, 155 Ind. 345, 58 N. E. 260–262; Disbrow v. Board of Supervisors, 119 Iowa, 538, 93 N. W. 585, 586; Shinn v. Cunningham, 120 Iowa, 383, 94 N. W. 941; Burnett v. Markley, 23 Or. 436, 31 P. 1050, 1051; Garrigus v. Board of Commissioners, 157 Ind. 103, 60 N. E. 950, 951; Blades v. Hawkins, 133 Mo. App. 328, 112 S. W. 979, 982, affirmed 240 Mo. 187, 144 S. W. 1198, Ann. Cas. 1913B, 1082; Prothero v. Board of Commissioners, 22 Idaho, 598, 127 P. 175, 177; Harris v. Gibbins, 114 Cal. 418, 46 P. 292.

[3] The validity of said contract under consideration was further attacked by appellees on the ground that the services therein contracted to be rendered by said Pickett do not require scientific and technical knowledge or special or professional skill on his part or on the part of his employés assisting in the performance or the same, and that the recitals in said contract that such skill and knowledge are required in the performance thereof were made in a subtle effort to avoid the provision of the statute requiring contracts of the magnitude of this one to be let to the lowest bidder after due advertisement for bids. See Rev. St. art. 2368. While the amount which Pickett may be entitled to receive upon full performance of said contract is not made certain by the terms thereof, it is admitted that such amount will exceed $2,000, the amount required by said article of the statute to invoke the application of its provisions. There is no contention that said article is applicable to contracts for services requiring scientific and technical knowledge and special and professional skill and experience. See Hunter v. Whiteaker (Tex. Civ. App.) 230 S. W. 1096 (writ refused). Appellants submitted ample evidence to sustain their contention that such knowledge, skill, and experience were required for the proper performance of said contract, and that such knowledge, skill, and experience were being actually furnished

by Pickett in the discharge of his duties thereunder. There was no attempt to discredit or contradict such evidence. Neither was there any attempt to show a subtle or fraudulent purpose on the part of the commissioners' court in incorporating such recitals in said written contract. This contention of appellees is overruled.

[4] The validity of the contract under consideration was further attacked on the ground of an alleged failure to comply with the provisions of article 5924, Revised Statutes. The contract purports on its face to be the act of Thos. Y. Pickett & Co. and it is so signed. It does not disclose who is the real contracting party, nor who are such parties, if more than one. The evidence introduced at the hearing shows, without attempt at contradiction, that Thos. Y. Pickett was the sole contracting party and the person and only person doing business under such apparent firm name, and that such facts were disclosed to the members of the commissioners' court before said contract was entered into. If the provisions of said article were violated in this instance, which we do not find it necessary to determine, such violation, under the facts in this case and the holding of our Supreme Court in adopting the opinion written by Judge Bishop of the Commission of Appeals in the certified question case of Paragon Oil Syndicate v. Rhoades Drilling Co., 277 S. W. 1036, did not render the said contract void or unenforceable.

We have considered all the other grounds upon which appellants attacked the validity of said contract in the trial court, and the same are overruled. The issue involved in this case is the validity of said contract. Such issue was clearly joined in the trial court on the hearing of said application for injunction. The facts were presented to the court with considerable elaboration. The evidence covers all the points presented by appellees in their petition as ground for declaring said contract void and unenforceable. It is practically undisputed. The case was fully developed on such hearing. The action of the court in granting the temporary injunction, from which action this appeal is prosecuted, was an erroneous exercise of his discretion, and such action is here reversed, and the temporary injunction applied for is refused.